## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:09-cv-01729 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| | ) | [Re: Motion at Docket 58] |
| MARK NICHOLSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### I.  MOTION PRESENTED

At docket 58, plaintiff United States of America ("the government") moves for partial summary judgment against defendants Mark Nicholson, the Dale A. Nicholson Trust, the Nicholson Children's Trust, Speedy's Convenience Inc., and Native American Energy, LLC on Counts 1 through 6 of the Amended Complaint at docket 22.[1]  At docket 61, defendants oppose the motion.  Plaintiff replies at docket 66.  Oral argument was requested at docket 67.

---

[1]Plaintiff originally moved for partial summary judgment against defendant Brian Nicholson, but subsequently withdrew its request for partial summary judgment against Brian Nicholson.  Doc. 66 at p. 1, n.1.

## II.  BACKGROUND

The following facts are taken from plaintiff's statement of facts and are not disputed by defendants.  Speedy's Convenience Inc. is comprised of two distinct operations: Speedy's Truck Stop, which consists of a convenience store, restaurant, fuel pump for selling retail gasoline, and a repair shop ("the truck stop"), and a distillation facility ("the distillation facility"), "where transmix has, at times, been processed back into gasoline and diesel for retail and wholesale sale at the adjacent truck stop."[2]  The truck stop and part of the distillation facility are located on property in Arizona that was owned by the Dale A. Nicholson Trust from May 1999 until July 2008. Another part of the distillation facility is located on an adjacent parcel of land in New Mexico, owned by the Nicholson Children Trust from about May 1999 until the present.

On February 24, 2004, the Arizona Department of Environmental Quality ("ADEQ") conducted an inspection of Speedy's Truck Stop in response to a complaint alleging illegal dumping.  ADEQ inspectors noted evidence of spills and leaks, including an odor of petroleum from the soil and berm surrounding the main tank farm, two 55-gallon containers of oil overflowing onto the soil, a sump containing black liquid running from the distillation unit to a waste tank, an unlabeled tank partially buried and partially filled with wastewater, several unlabeled 55-gallon containers of waste, and a spill or leak from the piping station that flowed into a drain that emptied into a waste tank southwest of the piping station.

---

[2] Doc. 59, p. 1, ¶ 2.  Transmix is a gasoline and diesel mix produced during transportation of these fuel products through petroleum product pipelines.

On March 8, 2004, ADEQ issued two Notices of Violation ("NOV") to "Speedy's Truck Stop Inc., Attention: Clyde Fredrickson," alleging several violations of federal and state hazardous waste laws.  The NOVs requested in part that Speedy's Truck Stop submit waste determinations from a third–party contractor for the liquid and sludge in Tank 23, as well as for twelve 55-gallon drums containing waste.   Speedy's Truck Stop contracted with Animas Environmental Services ("Animas"), which collected a wastewater sample from Tank 23 on March 24, 2004.  The sample contained 34,000 milligrams per liter ("mg/L") of benzene.  The "toxicity characteristic threshold for hazardous waste is 0.5 mg/L benzene."[3]  On March 31, 2004, Animas contacted a non-hazardous landfarm in New Mexico about accepting approximately 11,000 gallons of wastewater.

On April 14, 2004, the United States Environmental Protection Agency ("EPA") issued a Unilateral Administrative Order ("UAO") under 42 U.S.C. § 6973 to Native American Energy, LLC, Dale A. Nicholson Trust dba Speedy's Truck Stop, Todd Nicholson, Brian Nicholson, Speedy's Convenience, Inc., Speedy's Convenience I, Inc., Clyde H. Fredrickson, III, Petro U.S.A., Inc., and PetroUSA, Inc, directing them to cease all discharges; make proper hazardous waste determinations; collect, characterize, and dispose of all waste from sumps, trenches, oil/water separators, and waste collection tanks and drums; and prepare a sampling and analysis plan.[4]  The UAO stated in part that failure to comply with the UAO could result in the EPA commencing a civil action

---

[3]Doc. 59 at p. 5.

[4]Doc. 59-1 at p. 20.

under 42 U.S.C. § 6973(b) to require compliance and to assess a civil penalty for such

failure or refusal.  PetroUSA, Native American Energy, and the Dale A. Nicholson Trust

("respondents") responded to the UAO affirming each entity's intent to comply.

On April 23, 2004, the EPA conducted a Spill Prevention Control and

Countermeasures ("SPCC") inspection at the facility.  EPA inspectors observed that

Tanks 23 and 24 were both partially buried, unlabeled, open top tanks, which contained

wastewater.  During the inspection, the EPA collected four soil samples and two liquid

samples.  The soil samples all demonstrated evidence of petroleum spills, TPH-Diesel,

or indicated the presence of hazardous waste.

On April 30, 2004, respondents submitted a proposal for corrective measures,

which designated Clyde H. Fredrickson III, General Manager of Native American

Energy, as project coordinator.[5]  On May 5, 2004, the EPA conducted another

inspection at the facility and obtained four additional sample from Tanks 23 and 24.

The collected data indicated that the wastewater in Tank 23 contained between 3 and

20 mg/L benzene and the wastewater in Tank 24 contained 6 mg/L benzene.

In July 2004, respondents conducted an investigation for other potential areas of

concern, and identified three additional areas for potential corrective action: the

drainage ditch along the northwestern property line, the drainage ditch along the I-40

frontage road adjacent to the diesel island, and the drainage trench along the I-40

frontage road adjacent to the gasoline island.  The investigation indicated that all three

---

[5]Doc. 59-1 at p. 95.

areas contained petroleum contaminated soils, and the EPA directed respondents to submit a corrective action work plan for excavation of the contaminated soils.

In July 26, 2004, Animas asked the EPA for information on how to obtain an EPA ID number for the distillation facility.  On August 5, 2004, the EPA issued a hazardous waste generator ID number to the Dale A. Nicholson Trust.

In October 2004, the EPA oversaw implementation of the corrective action work plan at the distillation facility.  During the excavation, petroleum contaminated soils in the drainage ditch near the diesel island were determined to be hazardous waste due to high concentrations of benzene.  In June 2004, respondents cleaned the fuel trenches, generating nine drums of hazardous waste.  Based on the presence of contaminated soil in the diesel trench, the EPA determined that the sump should be removed.  In November 2004, the EPA oversaw removal of the sump and approximately 40 cubic yards of contaminated soil.

Between August 14 and 20, 2004, respondents shipped about 21,500 gallons of hazardous wastewater from Tanks 23 and 24.  On September 3, 2004, respondents shipped 25 drums of hazardous waste offsite.

On February 11, 2005, the EPA sent a letter to Clyde Fredrickson and the Dale A. Nicholson Trust stating that the activities required under the UAO "have been completed to the satisfaction of the EPA."[6]  The EPA further indicated that it "may determine that additional monitoring, testing, analysis, reporting or removal is necessary," and that it "is evaluating approaches to the residual contamination, and may

---

[6]Doc. 62 at p. 18.

in the near future require that another phase of the site investigation be conducted."[7]

On February 18, 2010, the EPA filed an amended complaint pursuant to Section 3008(a)(1) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6928(a)(1), and Section 325(c) of the Emergency Planning and Community Right to Know Act ("EPCRA"), 42 U.S.C. § 11045, against Mark Nicholson, Brian Nicholson, the Dale A. Nicholson Trust, the Nicholson Children Trust, Inc., Speedy's Convenience, Inc., and Native American Energy LLC pursuant to 42 U.S.C. § 6928(a)(1) and 42 U.S.C. § 11045.  The amended complaint alleges seven claims under 42 U.S.C. § 6928(a)(1) and one claim under 42 U.S.C. § 11045.  Counts 1 through 7 allege that defendants violated 42 U.S.C. § 6928(a)(1) by failing to: 1) make a hazardous waste determination under 40 C.F.R. § 262.11; 2) obtain a permit or grant of interim status in violation of  40 C.F.R. § 270.1; 3) notify the EPA of hazardous waste generation activity under 42 U.S.C. § 9610; 4) obtain an EPA ID number as required by 40 C.F.R. § 262.12(a); 5) maintain a complete contingency plan under 40 C.F.R. § 265.51(a); 6) provide hazardous waste management training in violation of 40 C.F.R. § 265.16; 7) cover, label, and clean up used oil as required by 40 C.F.R. Part 279.  The amended complaint further alleges defendants violated the EPCRA by failing to submit an inventory to the tribal emergency response commission, the local emergency planning committee, and the fire department by March 1 of 2001, 2002, 2003, and 2004.

---

[7]Doc. 62 at p. 19.

### III.  DISCUSSION

The government filed this civil action to obtain civil penalties for "past and ongoing violations" of the RCRA, EPCRA, and regulations promulgated to enforce these statutes.  The government now moves for partial summary judgment on the issue of liability for Counts 1 through 6 against defendants Mark Nicholson, the Dale A. Nicholson Trust, the Nicholson Children Trust, Speedy's Convenience Inc., and Native American Energy, LLC.  Counts 1 through 6 allege that defendants violated the RCRA by failing to 1) make a hazardous waste determination; 2) obtain a permit for storage of hazardous waste; 3) file a notification of hazardous waste activity with the EPA; 4) obtain an EPA identification number; 5) maintain a contingency plan; and 6) properly train employees handling hazardous waste.

Counts 1 through 6 are all brought pursuant to 42 U.S.C. § 6928(a)(1), which is entitled "Compliance orders" and provides in pertinent part:

> ... whenever on the basis of any information the Administrator determines that any person has violated or is in violation of any requirement of this subchapter, the Administrator may issue an order assessing a civil penalty for any past or current violation, requiring compliance immediately or within a specified time period, or both, or the Administrator may commence a civil action in the United States district court in the district in which the violation occurred for appropriate relief, including a temporary or permanent injunction.

The plain language of 42 U.S.C. § 6928(a) provides that upon determining that a person has violated or is violating any requirement of the RCRA, the EPA Administrator "may issue an order assessing a civil penalty for any past or current violation, requiring compliance... or both" or the EPA Administrator "may commence a civil action... for appropriate relief, including a temporary or permanent injunction."  In assessing a civil penalty, the EPA Administrator "shall take into account the seriousness of the violation

and any good faith efforts to comply with applicable requirements."[8]  Section 6928(g)

further provides that a person who violates any requirement of the RCRA "shall be liable

to the United States for a civil penalty in an amount not to exceed $25,000 for each

such violation."[9]

Here, the EPA Administrator did not file an order assessing a civil penalty for any

past or current violation or demanding compliance, but rather filed a civil action under

§ 6928(a) requesting the court to assess penalties "of up to $27,500 per day for each

violation occurring on or after January 31, 1997, through March 15, 2004, $32,500 per

day for each violation occurring after March 15, 2004, through January 12, 2009, and

$37,500 per day for each violation occurring after January 12, 2009."[10]  Based on the

plain language of 42 U.S.C. § 6928(a)(1), it appears to the court that the EPA

Administrator has the authority to assess civil penalties for any past or current violation

of the RCRA, taking into account the seriousness of the violations and good faith efforts

to comply with applicable requirements.

Although § 6928(a) provides that the government may file a civil action in district

court "for appropriate relief, including a temporary or permanent injunction," the

government has not requested injunctive relief, nor does the amended complaint appear

to allege any ongoing violations of RCRA.  Moreover, the government issued a

compliance order of sorts under 42 U.S.C. § 6973(a), to which respondents complied.

---

[8]42 U.S.C. § 6928(a)(3).

[9]The penalty amount was increased in 40 C.F.R. § 19.4.

[10]Doc. 22 at p. 15.

The government's letter to respondents dated February 11, 2005, stated that the activities required under the UAO "have been completed to the satisfaction of the EPA."[11]  Although the government's letter indicated it "may determine that additional monitoring, testing, analysis, reporting or removal is necessary," to the court's knowledge it has not done so.

Under the circumstances, it is not clear to the court that it is authorized to grant the relief requested by the government under 42 U.S.C. § 6928(a)(1).  Consequently, the court requests additional briefing from the government explaining why the government has not exercised its authority under 42 U.S.C. § 6928(a)(1) to assess civil penalties for any past or current violations of the RCRA, and whether the government is alleging any ongoing violations of the RCRA for which it seeks injunctive relief.  If the government is not alleging any ongoing violations, the court requests that the government provide controlling authority demonstrating the court's authority to assess civil penalties for purely past violations under 42 U.S.C. § 6928(a)(1).  The government should also make clear what impact the letter of February 11, 2005, has on the availability of relief for activities prior to that date.  In addition, the government should clearly indicate for each count the dates of the alleged violations for which it seeks penalties.

## IV.  CONCLUSION

For the reasons set out above, plaintiffs are directed to file supplemental briefing, not to exceed eight pages, addressing the issues raised herein within 14 days from the

---

[11]Doc. 62 at p. 18.

date of this order.  Defendants may file a response, no more than eight pages in length,

to the supplemental briefing no later than 14 days after the plaintiffs have filed their

supplemental briefing.  No reply shall be filed unless requested by the court.

DATED this 24th day of June, 2011.


_____/s/_____
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE